IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-02614-RBJ

TEDDY J. GUERIN,

    Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of Social Security,

    Defendant.

---

## ORDER

---

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Teddy J. Guerin's application for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI"). Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands for proper analysis.

**STANDARD OF REVIEW**

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). To be disabling, a claimant's conditions must be so limiting as to preclude any substantial gainful work for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final SSA decision, the District Court examines the record and determines whether it contains

substantial evidence to support the decision and whether SSA applied correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). The District Court's determination of whether the ruling by the Administrative Law Judge ("ALJ") is supported by substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

### A. Procedural Background

Mr. Guerin's case has remained unresolved for over ten years. Mr. Guerin first applied for disability benefits in March of 2010. ECF No. 14 at v. The ALJ denied the claim after Mr. Guerin failed to appear at the hearing. R. 144. Mr. Guerin appealed, and the Appeal Council remanded the case for a new hearing, in part because Mr. Guerin had a diagnosis of depression with a Global Assessment of Functioning score of fifty-five out of one hundred which the ALJ failed to take into account. R. 150–51.

On September 5, 2013 an ALJ issued an unfavorable decision following the second hearing. R. 152. Again, the Appeal Council remanded the case for a new hearing due to errors in the ALJ's assessment of Mr. Guerin's functional limitations. R. 171–73. On September 11, 2015 an ALJ issued another unfavorable decision. R. 13. Mr. Guerin appealed this decision to federal court. District Judge Marcia S. Krieger found the ALJ's conclusion that Mr. Guerin

could perform his past relevant work to be unsupported by substantial evidence and remanded for a new hearing. Case No. 16-cv-2751-MSK.

On May 15, 2019 ALJ Debra Boudreau issued another unfavorable decision. R. 864–81. The Appeals Council declined to review the decision, making the ALJ decision final. On September 13, 2019 Mr. Guerin filed a timely complaint and petition for review in this court. ECF No. 1.

### B. Factual Background

Mr. Guerin is a fifty-five-year-old former warehouse worker. ECF No. 14 at vi. In August of 2010, a state agency physician, Donald Ferlic, M.D., reviewed Mr. Guerin's treatment records and, without examining him, concluded that Mr. Guerin had no severe physical impairments. R. 26. In September of 2010, SSA consultative physician Frederick V. Malmstrom, Ph.D., examined Mr. Guerin and opined that he was capable of light work and cooperating with coworkers and supervisors, but that he would be distracted by pain. R. 716.

That month, a state agency psychological consultative examiner, Tawnya Brode, Psy.D., reviewed Mr. Guerin's treatment records and opined that he had severe mental impairments and was moderately impaired in dealing with detailed instructions, maintaining attention and concentration, and completing normal workweeks without interruptions. R. 141. Dr. Brode also opined that Mr. Guerin was "capable of simple tasks in a setting where productivity is not necessarily measured by pace." R. 137.

On July 1, 2013 examining physician Carlos Rodriguez, Ph.D., opined that Mr. Guerin was at least moderately impaired in most areas of mental functioning, would be off-task for ten to twenty percent per workday, and would be absent from work three or more days per month. R. 806–08.

In 2015 Mr. Guerin began seeing podiatrist Mark Maurer, D.P.M.  R. 27.  Dr. Maurer diagnosed Mr. Guerin with neuritis and a first metatarsal space neuroma.  R. 809.  He opined that Mr. Guerin could only be on his feet for four hours per day.  *Id.*

In 2015 the Commissioner retained Robert E. Pelc, Ph.D., to review Mr. Guerin's treatment records and testify at the 2015 hearing as a medical expert.  R. 16.  Dr. Pelc testified that Mr. Guerin could follow simple instructions if social interactions were not frequent or prolonged.  R. 56.  Dr. Pelc also stated that he had reviewed Dr. Rodriguez's assessment of Mr. Guerin's mental impairments, and that he substantially agreed with Dr. Rodriguez's assessment, including the finding that Mr. Guerin was moderately impaired in most areas of mental functioning.  R. 57–58.

After the 2017 remand by Judge Krieger, the Commissioner had Mr. Guerin's treatment records reviewed by Alison H. McAlister, M.D.  R. 1247.  Dr. McAlister opined that Mr. Guerin had only mild mental limitations that did not impact his ability to work.  R. 1259.

### C. May 15, 2019 ALJ Decision

After evaluating the evidence of Mr. Guerin's alleged disability according to the SSA's standard five-step process, ALJ Boudreau issued an unfavorable decision.  R. 869–81.  At step one the ALJ found that Mr. Guerin had not engaged in substantial gainful activity since January 29, 2009.  R. 869.  At step two the ALJ found that Mr. Guerin had the following severe impairments: status post fracture of the left foot at the first and second metatarsals and obesity.  R. 870.  At step three the ALJ determined that Mr. Guerin's impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; 416.926).  R. 872.

At step four the ALJ found that Mr. Guerin had the Residual Functional Capacity ("RFC") to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c), except that he could occasionally lift fifty pounds and frequently lift twenty-five pounds.  R. 873.  He could sit, stand or walk for six hours in an eight-hour workday.  *Id.*  He could only occasionally climb ladders, ropes, or scaffolds.  *Id.*

In reaching this conclusion the ALJ assigned great weight to the mental assessment performed by state agency medical consultant Dr. Ferlic in 2010.  R. 875.  Dr. Ferlic concluded that Mr. Guerin had no severe psychological impairments.  *Id.*  The ALJ found that Dr. Ferlic supported his opinion with reference to Mr. Guerin's daily activities, the fact that Mr. Guerin was not on psychiatric medication, and the fact that Mr. Geurin had had normal mental status examinations with other providers.  *Id.*  The ALJ found that the opinion was consistent with medical evidence, and though it was not given by a treating or examining medical source, that it was based on available records and a "comprehensive understanding of agency rules and regulations."  *Id.*  The ALJ also found the opinion to be internally consistent and well-supported by a reasonable explanation of the medical evidence.  *Id.*

The ALJ afforded moderate weight to Dr. Ferlic's medical assessment of Mr. Guerin, which found Mr. Guerin had no severe medically determinable physical impairments.  *Id.*  The ALJ discounted this part of Dr. Ferlic's opinion, noting that it was a non-treating, non-examining opinion and giving some credit to Mr. Guerin's assertions of pain throughout the record.  *Id.*

The ALJ assigned little weight to the opinion of state agency psychological consultative examiner Dr. Brode, who opined that Mr. Guerin had severe mental impairments and moderate limitations in concentration, persistence, and pace.  R. 876.  The ALJ noted that the record did not show Mr. Guerin had sought or received significant mental health treatment and that Mr.

5

Guerin's testified at the hearing that he felt unable to work due to pain in his foot. *Id.* The ALJ concluded that Dr. Brode's opinion was not well-rationalized or supported by evidence in the record. *Id.*

The ALJ assigned partial weight to the opinion of Dr. Malmstrom, who found that Mr. Guerin did not have any work-related mental limitations, finding depression secondary to physical problems. *Id.* The ALJ noted that Dr. Malmstrom's examination was a one-time visit, that this opinion is now remote in time, having been completed over nine years ago, and that it relied on older psychological functional criteria. *Id.*

The ALJ assigned little weight to a "mental residual functional capacity" form completed by Dr. Rodriguez, which indicated that Mr. Guerin had several severe mental impairments and many moderate ones. *Id.* The ALJ stated that Dr. Rodriguez had not supported his findings and that the findings themselves were internally inconsistent, inconsistent with Mr. Guerin's treatment history including objective diagnostic evidence, inconsistent with Mr. Guerin's self-reported activities, and inconsistent with Mr. Guerin's lack of mental health treatment. R. 877.

The ALJ assigned little weight to the opinion of Dr. Maurer, who opined that Mr. Guerin could only be on his feet for four hours in an eight-hour workday. *Id*. The ALJ found that the opinion was unsupported by clinical findings or observations and relied on Mr. Guerin's subjective complaints. *Id.* The ALJ noted mild and temporary improvements in Mr. Guerin's pain following injections, and that Mr. Guerin only wore his orthotics three out of seven days. *Id.* The ALJ also noted that Mr. Guerin reported his worst pain as a six on a ten-point scale. *Id.*

The ALJ also afforded little weight to the opinion of Dr. Pelc, who opined that Mr. Guerin had several mental health diagnoses that would have a moderate impact on his ability to concentrate, persist, and maintain pace. *Id.* The ALJ noted that Dr. Pelc was a non-examining

6

and non-treating source.  The ALJ found this opinion to be inconsistent with Mr. Guerin's lack of mental health treatment as well as his history and self-reported activities.  *Id.*

The ALJ assigned no weight to two Colorado Department of Human Services forms completed by Greg Grahek, ACNP, who found that Mr. Guerin was permanently disabled by his psychological conditions and had a musculoskeletal disorder that substantially precluded his past work.  R. 877–78.  The ALJ noted that the state agency eligibility criteria differ from that of the Social Security Administration, and that disability is an issue reserved for the Commissioner.  R. 878.

Finally, the ALJ assigned great weight to the opinion of independent medical consultant Dr. McAlister, who the Commissioner hired to review Mr. Guerin's records and issue an opinion.  *Id.*  Dr. McAlister found Mr. Guerin had no limitations in understanding, remembering, or applying information but had mild limitations in interacting with others, concentrating, persisting, maintaining pace, adapting, and managing himself.  *Id.*

## ANALYSIS

Mr. Guerin now seeks review of the 2019 decision.  He argues that the ALJ improperly weighted Dr. Maurer's opinion.  ECF No. 14.  Mr. Guerin also argues that the ALJ did not properly assess the severity of his mental limitations, relying primarily on Dr. McAlister's opinion while ignoring the opinions of Drs. Pelc and Brode.  *Id.* at 11–17.

### A. <u>Weight of Medical Source Opinions</u>

In the Tenth Circuit, the opinion of a treating physician is entitled to controlling weight if it "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.

2004)) (internal quotations omitted). "An ALJ may decline to give controlling weight to the opinion of a treating physician where he articulates specific, legitimate reasons for his decision." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (quoting *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008)) (internal quotations omitted).

Regarding non-treating sources, an ALJ should generally give greater weight to an examining source than a non-examining source. *See* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). However, an examining medical-source opinion "may be dismissed or discounted" if the ALJ properly evaluates the factors set out in 20 C.F.R. § 404.1527(c) and § 416.927(c) and provides "specific, legitimate reasons for rejecting it." *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (citing *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003)) (internal quotations omitted). The evaluation should consider (1) whether the provider had an examining relationship; (2) whether the provider had a treatment relationship, taking into account (i) the length of the treatment relationship and the frequency of examination and (ii) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record; (5) the specialization of the provider in the area; and (6) "other factors" raised by the claimant. *See* 20 C.F.R. § 404.1527(c).

Mr. Guerin argues that the ALJ did not provide valid reasons for assigning little weight to Dr. Maurer's opinion that Mr. Guerin could only be on his feet for four hours in an eight-hour workday. ECF No. 14 at 3. Mr. Guerin does not claim that Dr. Maurer's opinion is entitled to controlling weight. ECF No. 14 at 7. Rather he argues that the ALJ provided illegitimate reasons for assigning Dr. Maurer's opinion little weight. He specifically challenges two of the

8

ALJ's reasons for the assignment, as well as the relative weighting of the opinions of Drs. Maurer and Ferlic. *Id.*

First, Mr. Guerin challenges the ALJ's finding that Dr. Maurer's opinion was not supported by "described clinical findings or observations to support the limitation, but rather relied on Mr. Guerin's subjective complaints." R. 877. Dr. Maurer's opinion is contained in a single form which asked him to estimate how long Mr. Guerin could be on his feet at one time and in an eight-hour day. R. 809. The completed form does not indicate what Dr. Maurer relied on in reaching his conclusions. However, the ALJ concluded that Dr. Maurer's opinion was supported solely by Mr. Guerin's subjective complaints rather than objective assessments. R. 877. It is not clear from the opinion why the ALJ drew this conclusion, given the many objective assessments documented in Dr. Maurer's treatment notes. R. 810–18. Nor is it clear from Dr. Maurer's treatment records that the ALJ's conclusion is accurate. As Mr. Guerin notes, objective assessments in the treatment records contain support for Dr. Maurer's opinion, including his diagnosis of a neuroma, R. 812, 814, multiple findings of decreased range of motion, R. 812, 814, 817, a finding that Mr. Guerin had a "clear inability to dorsiflex foot at ankle," R. 812, multiple findings of positive click and Mulder's sign, R. 814, 817, and multiple findings of an elevated first ray, R. 814, 817, among others.

Further, a physician's reliance in part on a claimant's subjective reports in drawing some of his conclusions does not provide reason to discount the opinion on its face. *See Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1177 (10th Cir. 2014). In *Knight ex rel. P.K. v. Colvin*, the Tenth Circuit concluded that though "subjective reports do not constitute 'medically acceptable clinical and laboratory diagnostic techniques' and can support giving a treating physician's opinion less than controlling weight," the subjective reports in question were "consistent and pervasive

9

throughout the record." 756 F.3d at 1177. The Tenth Circuit then rejected the ALJ's reasoning because "the ALJ did not expressly reject any of these reported behaviors or discuss how they failed to support" the treating physician's finding of impairment. *Id.* Here the ALJ herself gave some weight to Mr. Guerin's repeated subjective complaints of pain to his providers. R. 875–76. Given the ALJ's own reliance on Mr. Guerin's subjective complaints the ALJ was not entitled to assign little weight to the opinion based on such reliance without explaining how the complaints failed to support Dr. Maurer's findings.

Second, Mr. Guerin challenges the ALJ's finding that evidence of improvement in Mr. Guerin's foot pain was inconsistent with Dr. Maurer's opinion. R. 877. The ALJ is correct that on April 2, 2015, the same day he completed the form constituting his opinion, Dr. Maurer found "mild improvement" in Mr. Guerin's foot pain and noted that injections helped Mr. Guerin's symptoms for a few days. R. 810. Yet the ALJ has provided no reason to believe that Dr. Maurer's findings of mild and temporary improvement were inconsistent with his opinion that Mr. Guerin could only be on his feet for four hours a day.

Third, Mr. Guerin also argues that the ALJ should have assigned Dr. Maurer's opinion at least equal weight as Dr. Ferlic's opinion. He argues that Dr. Ferlic's opinion should be entitled to less weight because he is a non-treating, non-examining physician, unlike Dr. Maurer. ECF No. 14 at 8. However, as noted above, Mr. Guerin concedes that Dr. Maurer's opinion is not entitled to controlling weight as a treating provider. *Id.* at 7. Thus, the ALJ only had to "explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ 404.1527(d)-(f), 416.927(d)-(f)." *Reveteriano v. Astrue*, 490 F. App'x 945, 947 (10th Cir. 2012) (unpublished). Mr. Guerin is right that Dr. Maurer's status as an examining source is relevant to the determination. But the ALJ

10

can consider other factors, including the supportability of the opinion and consistency of the opinion with the record.

Nor did the ALJ fully adopt Dr. Ferlic's opinion that Mr. Guerin needed no limitations in his ability to walk and stand. The ALJ assigned the opinion only moderate weight, in part because she concluded that Mr. Guerin's complaints of pain warranted some limitations in walking and standing and did incorporate some limitations in her RFC. R. 875. The ALJ further acknowledged the lack of persuasiveness of the opinion given Dr. Ferlic's status as a non-examining, non-treating source. I find that the relative weighting of these two non-treating providers does not alone present a reason for remand.

Finally, Mr. Guerin also argues that the ALJ improperly cited the lack of support Dr. Maurer provided for his opinion. Mr. Guerin argues this is inconsistent with the ALJ's assignment of moderate weight to Dr. Ferlic's opinion, which he claims was similarly sparse. ECF No. 14 at 8. Mr. Guerin is correct that an ALJ must not discount a physician's opinion for containing a weakness, when a comparable weakness appears within another opinion which the ALJ accepted. *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985) ("We cannot agree with the ALJ's summary rejection of these reports as based on inadequate findings when they are comparable to those reports the ALJ found sufficiently detailed."). However, I disagree with Mr. Guerin that Dr. Ferlic's opinion is comparable to Dr. Maurer's. As noted above, Dr. Maurer's opinion was contained on a single page in which he answered four questions. R. 809. I agree with Mr. Guerin that Dr. Maurer's opinion is supported by his treatment notes, but I cannot agree that Dr. Ferlic's opinion presents a similar case. Dr. Ferlic's opinion is a much more comprehensive analysis of Mr. Guerin's alleged impairments, relying on numerous medical records from other providers. R. 132–43.

11

I agree with Mr. Guerin that several of the reasons presented by the ALJ for assigning little weight to Dr. Maurer's opinion are unsupported by substantial evidence. Though not discussed by Mr. Guerin, the ALJ also noted that Mr. Guerin only wore his orthotics for three out of seven days; that his pain was worst when he was on feet all day; that he reported a twenty percent improvement of symptoms in late 2014 and early 2015, before Dr. Maurer issued his opinion; and that he rated his worst pain as a six out of ten. R. 877. But the ALJ does not provide any explanation as to how these facts could justify discounting Dr. Maurer's opinion nor how they impact the factors listed in 20 C.F.R. § 404.1527(c).

Defendant claims that Mr. Guerin's statement to Dr. Maurer that his pain was worst when he was on his feet "all day" is inconsistent with Dr. Maurer's finding that he could only be on his feet for four hours a day. ECF No. 15 at 13. Presumably defendant means to suggest that if Mr. Guerin told Dr. Maurer he had such pain, then he had to be on his feet "all day" to determine this and was therefore "more capable than Dr. Maurer opined." *Id.* I disagree. I find that Mr. Guerin's report that his pain was worst when on his feet all day supports, rather than contradicts, Dr. Maurer's conclusion that Mr. Guerin should not be on his feet for a full eight-hour workday.

Defendant also cites examinations by other treating providers as evidence that Dr. Maurer's opinion is unsupported by the record. *Id.* However, the ALJ did not cite other providers as a reason for dismissing Dr. Maurer's opinion. R. 877. Defendant cannot supply a post-hoc rationalization for the ALJ's failure to make explicit findings. *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) ("[T]he agency would inherently be offering a new, post-hoc rationale for its decision contrary to the general rule of *SEC v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943)."); *see also Russ v. Colvin*, 67 F. Supp. 3d 1274, 1279 (D. Colo. 2014)

("Commissioner's attempts, post hoc, to fill in the blanks on the ALJ's behalf are improper.") (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005)).

The ALJ did not provide specific and legitimate reasons for assigning little weight to Dr. Maurer's opinion, and therefore I remand for proper analysis.

### B. Severity of Mental Limitations

Mr. Guerin argues the ALJ improperly assessed his mental impairments, which four medical sources substantiated to various extents. ECF No. 14 at 11. Dr. Brode and Dr. Rodriguez both found Mr. Guerin had both severe and moderate mental impairments, while Dr. Pelc found Mr. Guerin had moderate mental impairments, and Dr. Malmstrom found Mr. Guerin had mental impairments that did not interfere with his ability to work. R. 875–76. The ALJ found that Mr. Guerin had no severe mental impairments and did not include any limitations related to his mental capabilities in his RFC. R. 870–73.

Mr. Guerin argues that the ALJ primarily relied on the opinion of Dr. McAlister in reaching this decision and challenges the weight assigned to Dr. McAlister's opinion in comparison to those provided by four other doctors. ECF No. 14 at 11–19. Mr. Guerin does not present evidence other than medical source opinions supporting his mental impairments. *See id.* As such, Mr. Guerin's argument goes to whether the ALJ properly weighed the various medical source opinions. Thus, I consider Dr. McAlister's opinion and whether the ALJ gave specific and legitimate reasons for the weight she assigned to that opinion. I also consider the relative weight of this opinion in comparison with others that discussed Mr. Guerin's mental impairments.

13

Mr. Guerin argues that the ALJ should not have assigned great weight to Dr. McAlister's opinions, challenging each reason the ALJ cited in support of this assignment. I address each argument in turn.

### 1. Review of Complete Treatment Records

In support of her assignment of great weight, the ALJ cited the fact that Dr. McAlister had access to Mr. Guerin's longitudinal treatment records, including mental health records. R. 878. An ALJ may consider "the extent to which a medical source is familiar with the other information in [a claimant's] case record . . . in deciding the weight to give to a medical opinion." 20 C.F.R. § 404.1527(c)(6). Mr. Guerin argues that access to his treatment records was not unique to Dr. McAlister, as Drs. Pelc and Brode both had access to similar records. ECF No. 14 at 13. However, Dr. McAlister was able to review records from 2009 through 2018, while Dr. Pelc reviewed records available through 2015, R. 16, and Dr. Brode reviewed records available from 2009 through 2010, R. 141. Thus Dr. McAlister's opinion may be appropriately given more weight given its basis in the most recent and longest span of evidence.

### 2. Expertise in SSA Rules and Assessment

The ALJ cited Dr. McAlister's expertise in the SSA program rules and "in evaluating evidence with regard to functional ability assessment" as further support for her decisions. R. 878. Defendant notes that "[f]ederal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). However, Mr. Guerin correctly points out that this expertise should also weigh in favor of the opinions of Dr. Brode and Pelc, both of whom are agency consultants as well. ECF No. 14 at 13. Thus, this does not provide reason to weigh Dr. McAlister's opinion more highly than those of Drs. Brode and Pelc.

3. <u>Changes in Step Three Listing Criteria</u>

The ALJ pointed out that Dr. McAlister's opinion noted and reflected a change in the step three listing criteria for analyzing mental function since Mr. Guerin's case was last reviewed. R. 878. This does reflect Dr. McAlister's familiarity with the SSA program and evaluation method.

Mr. Guerin claims that despite Dr. McAlister's note of the change in criteria, she still applied the same criteria as Dr. Brode. ECF No. 14 at 14. Defendant does not challenge this assertion. Thus Dr. McAlister's acknowledgment of the criteria change does not distinguish her opinion from the other consultative opinions that applied the same criteria.

4. <u>Consistency of the Opinion with the Record</u>

The ALJ found Dr. McAlister's opinion "consistent with the entire record," but did not explain how she drew this conclusion or what specific parts of the record support the opinion. R. 878. Evidence is not substantial if it "constitutes mere conclusion." *Musgrave*, 966 F.2d at 1374. I agree with Mr. Guerin that "such generalized, global references to the record make the ALJ's opinion nearly impossible to review, and certainly do not constitute substantial evidence in support of the Commissioner's disability determination." *Gutierrez v. Colvin*, 67 F. Supp. 3d 1198, 1203 (D. Colo. 2014).

5. <u>Lack of Mental Health Treatment</u>

The ALJ found that Dr. McAlister's opinion was consistent with Mr. Guerin's lack of mental health treatment and his hearing testimony that he was not receiving any mental health treatment other than his prescription for Zoloft. R. 878. In *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished), the Tenth Circuit explained that

> the [SSA] regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of treatment received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional

>limitations.  Further, attempting to require treatment as a precondition for
>disability would clearly undermine the use of consultative examinations.

The Tenth Circuit remanded to the ALJ in part because the ALJ had inappropriately weighed the claimant's lack of mental health treatment when assessing the severity of his mental impairments.  *Id.*  This rationale applies equally to an ALJ's assessment of the weight of a medical source's opinion.  *Grotendorst* holds that a claimant's lack of treatment does not indicate that his impairments do not exist or are less severe, and thus should not be interpreted as supporting an opinion finding no impairments.  I therefore agree with Mr. Guerin that the ALJ provided an illegitimate reason for her assessment of this opinion.

### 6. Mr. Guerin's Hearing Testimony

The ALJ found that Dr. McAlister's opinion was also supported by Mr. Guerin's hearing testimony, which the ALJ characterized as stating that he felt "unable to work due to his foot pain and swelling and not due to any mental health condition."  R. 878.  Presumably the ALJ refers to the following exchange:

>ALJ: Have you thought about going back to work on a more permanent basis?
>Mr. Guerin: I want to, but physically, I can't do it.
>ALJ: Okay. And what about your physical condition prevents you from doing any work at all?
>Mr. Guerin: I could only do—I could only last so long on my foot and then it starts throbbing.

R. 920–21.  Mr. Guerin points out that the ALJ specifically asked him about physical conditions that prevented him from working, rather than mental or psychological conditions.  ECF No. 14 at 15–16.  I agree with Mr. Guerin that this testimony is largely unpersuasive on the issue of his mental impairments.  The fact that Mr. Guerin stated he wanted to go back to work but physically could not do so does somewhat support the ALJ's reading that Mr. Guerin's chief impairment is his foot.  But this testimony as a whole cannot provide much support for assigning

16

Dr. McAlister's opinion great weight and finding that Mr. Guerin has no mental impairments whatsoever despite the weight of four other contravening medical source opinions.

       7.   Expertise in Assessing "Physical Issues"

The ALJ noted that as a psychiatrist Dr. McAlister was qualified to consider Mr. Guerin's "physical issues and their impact on his overall ability to function in the workplace." R. 878. However, the ALJ also stated that she relied on Dr. McAlister's assessment of Mr. Guerin's "mental functioning limitations," and nothing else. *Id.* Thus Dr. McAlister's ability to assess Mr. Guerin's "physical issues" is irrelevant to the opinion in question.

       8.   Other Opinions

Mr. Guerin also argues that the ALJ should have rejected or assigned less weight to Dr. McAlister's opinion because it was inconsistent with the opinions of Dr. Malmstrom, Dr. Rodriguez, and in particular, consultative examiners Drs. Brode and Pelc. ECF No. 14 at 17–19. Mr. Guerin is correct that "to the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ 404.1527(d)-(f), 416.927(d)-(f)." *Reveteriano*, 490 F. App'x at 947.

Most of the factors the ALJ cited in support of Dr. McAlister's opinion were either illegitimate, such as Mr. Guerin's lack of mental health treatment and the medical source's expertise in "physical issues," or applied to Drs. Brode and Pelc as well, such as familiarity with program rules. Several of the reasons the ALJ gave for rejecting the opinions of Drs. Brode and Pelc applied to Dr. McAlister, such as that they were non-examining, non-treating sources.

In addition, the ALJ found Dr. Pelc's opinion to be inconsistent with Mr. Guerin's reported abilities, including that he failed to complete his welding degree due to low math

17

grades; that he can balance a checkbook and manage money; that he graduated from high school through the special education program in all subjects due to his slow learning; that he goes to the workforce center every day but is unqualified for the jobs he wants to apply to; that he lives with a friend; that he took the bus to the ALJ hearing, a trip that included transfers; that he is good at machine shop; and that he has no problems reading and can read a newspaper.  R. 877.  Some of these reported activities do indicate that Mr. Guerin does not have mental impairments, such as taking the bus, balancing a checkbook, and reading the newspaper.  However, some of these reports certainly indicate mental impairments, such as failing to complete a degree because of low math grades and graduating high school through the special education program.

The ALJ afforded Dr. Brode's opinion less weight in part because it references "physical findings by claimant's providers which included dark circles under his eyes and that he appeared shaky." R. 876.  The ALJ did not elaborate on why such reliance provides reason to discount Dr. Brode's opinion.

The ALJ also discounted Dr. Brode's opinion because it relied on Mr. Guerin's subjective complaints of "memory issues and difficulties understanding and dealing with stress." *Id.*  As discussed above, a physician's reliance in part on a claimant's subjective reports in drawing some of her conclusions does not provide reason to discount her opinion on its face.  *See Knight*, 756 F.3d at 1177.  As in *Knight*, here the ALJ provided no reasons for rejecting Mr. Guerin's subjective assertions

As a whole I have found that the ALJ had one specific and legitimate reason for weighing Dr. McAlister's opinion more highly than Drs. Brode and Pelc: that Dr. McAlister had access to the most recent treatment records as well as records covering the longest span of time.  I uphold the ALJ's assignment of great weight to Dr. McAlister's opinion for this reason.

However, in light of the ALJ's other reasoning, I conclude that she lacked specific and legitimate reasons for so severely discounting the opinions of Drs. Brode and Pelc and for failing to at least consider Mr. Guerin's mental impairments in her RFC calculation. Because the ALJ's opinion is deficient in its treatment of these opinions and the resulting RFC calculation, I reverse and remand for proper analysis.

## ORDER

For the reasons described above, the Court REVERSES the Commissioner's decision denying Mr. Guerin's application for SSI and SSDI and REMANDS for reevaluation of the evidence consistent with this order.

DATED this 3rd day of August, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge